CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 30 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **MOHAMMED A. SERDAH,** | ) | **Civil Action No. 7:11-cv-00023** |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) | **MEMORANDUM OPINION** |
| **v.** | ) |  |
|  | ) |  |
| **PETER H. EDWARDS,** *et al.*, | ) |  |
|  | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

This is an action by a *pro se* plaintiff, Mohammed Serdah ("Mr. Serdah"), pursuant to 28 U.S.C. §§ 1983 and 1985 with supplemental jurisdiction asserted over a state law intentional infliction of emotional distress claim against defendants, Judy Williams Serdah ("Ms. Serdah"), his former wife, and Peter Edwards ("Edwards"), the guardian *ad litem* appointed by the Roanoke County Juvenile and Domestic Relations ("JDR") court to represent the Serdahs' minor son in the Serdahs' custody and visitation disputes.[1] According to his complaint,[2] Mr. Serdah's claims stem from a false affidavit filed by Ms. Serdah in Franklin County, Virginia on October 28, 2010 claiming that Mr. Serdah had threatened to harm his minor son, Ms. Serdah, and her

---

[1] Mr. Serdah has filed four other civil actions in this court arising out of his domestic disputes with his former wife concerning the custody and care of their son. Serdah v. Edwards, 7:11cv276 (W.D. Va. June 13, 2011) (pending); Serdah v. Roanoke Cnty. Dep't of Soc. Servs., 7:09cv71, 2009 U.S. Dist. LEXIS 21362 (W.D. Va. Mar. 17, 2009); Serdah v. Serdah, 7:08cv323, 2009 U.S. Dist. LEXIS 2104 (W.D. Va. Jan. 12, 2009); Serdah v. Roanoke Cnty. Dep't of Soc. Servs., 7:08cv561, 2008 U.S. Dist. LEXIS 88004 (W.D. Va. Oct. 28, 2008). Totaled, he has named Ms. Serdah in four federal suits and Edwards in two.

[2] On March 15, 2011, Mr. Serdah moved for an extension of time to file a response to Edwards' motion for summary judgment, or in the alternative, for leave to file an amended complaint. The court neither granted nor denied Serdah leave to amend. Nevertheless, the court questioned Mr. Serdah at length at the hearing on Edwards' motion for summary judgment, found his answers nearly impenetrable, and could discern no appreciable differences between the claims in his original complaint and his first amended complaint. The court's reasoning in this opinion applies with equal force to either complaint.

parents. Mr. Serdah alleges that Edwards was complicit in filing the affidavit.[3] Edwards has

moved for summary judgment on the grounds that he has either absolute or qualified immunity,

has not violated Mr. Serdah's federal constitutional or statutory rights, and has not committed the

tort of intentional infliction of emotional distress. Edwards has filed an affidavit detailing his

actions in the matter. Ms. Serdah, who is proceeding *pro se*, has adopted Edwards' motions and

arguments. The court finds either that Edwards has immunity as to Mr. Serdah's federal claims

or that Edwards' uncontradicted affidavit discloses that all of Mr. Serdah's claims lack merit and

enters summary judgment for Edwards. The court enters summary judgment for Ms. Serdah on

the merits.

## I.

Mr. Serdah complains that on October 28, 2010, Ms. Serdah, with Edwards' assistance,

falsely swore in an affidavit in support of an application for protective order that on October 21,

2010 Mr. Serdah had threatened the Serdahs' minor son that Mr. Serdah would kill Ms. Serdah

and her parents. Mr. Serdah also complains that Edwards, who has served as guardian *ad litem*

for the Serdahs' minor son since 2007, "obstructed" Mr. Serdah's efforts to marshal evidence

showing "that he was not present at the location with his son on October 21, 2010" when he

allegedly made the threats.

Edwards has moved for summary judgment and filed an uncontradicted affidavit in

support of that motion. According to Edwards' affidavit, Edwards was not involved in the filing

of the affidavit with the Franklin County court by Ms. Serdah on October 28, 2010. However,

according to Edwards, several days earlier, on October 25, 2010, Edwards had personally

interviewed the Serdahs' minor son out of the presence of either parent. The child was "very

---

[3] Although Mr. Serdah routinely refers to the statements by Edwards and Ms. Serdah as "false" or "criminal charges," Mr. Serdah was never arrested, and there is nothing in the record showing that he was criminally charged.

Case 7:11-cv-00023-SGW   Document 61   Filed 08/30/11   Page 2 of 9   Pageid#: 408

upset" and crying and told Edwards that his father had picked him up from school on the afternoon of Thursday, October 21, 2010 and threatened to harm him, Ms. Serdah, and his maternal grandparents. Edwards concluded that the child was telling the truth. Believing it to be in the child's best interest, Edwards applied the next day to the Franklin County magistrate for an emergency protective order, which the magistrate issued pursuant to Virginia Code § 16.1-253.4.[4] The Franklin County protective order was to expire in three days, so Edwards filed a petition on October 29, 2010 for a preliminary protective order with the Roanoke County JDR court having jurisdiction over the domestic relations case, and that court entered a preliminary protective order pursuant to Virginia Code § 16.1-253 until the matter could be heard on November 5, 2010. From that time on, the matter proceeded in the JDR court. The November 5, 2010 hearing was continued to December 2, 2010. Mr. Serdah brought a number of documents to that hearing. According to Edwards' affidavit in support of his motion for summary judgment, Edwards did nothing to prevent Mr. Serdah from presenting those documents to the JDR court. In response, Mr. Serdah has filed various affidavits and documents in this court seeking to prove that he never threatened his minor son and that his former wife's affidavit is false.

## II. Mr. Serdah's § 1983 Claim Against Edwards

Mr. Serdah alleges that Edwards and Ms. Serdah conspired to violate his rights under the Constitution. Edwards maintains that he has absolute immunity from Mr. Serdah's § 1983 claim and that he is entitled to prevail on the underlying merits, as well. The court addresses the immunity and merit issues in reverse order and concludes that Edwards is entitled to summary

---

[4] Virginia Code § 16.1-253(A) states that "[a]ny . . . magistrate may issue a written or oral *ex parte* emergency protective order . . . in order to protect the health and safety of any person."

judgment, either because Mr. Serdah's claims lack merit or because Edwards is immune from suit.[5]

Mr. Serdah's conclusory allegations that Edwards conspired with his former wife to violate his rights are entitled to no deference, and Edwards' uncontradicted affidavit discloses that Edwards—correctly or incorrectly—perceived a physical threat and acted independently as a guardian *ad litem*, in what he perceived to be the best interest of the child. Mr. Serdah's attempt to prove that he never threatened his minor son and that his former wife's affidavit was false misses the mark. Indeed, a guardian *ad litem*, armed with information he finds credible that a parent may physically harm the minor that the guardian has been appointed to represent, would be derelict in not acting. Securing a protective order under the circumstances is no affront to the Constitution.[6] Consequently, Edwards is entitled to summary judgment.

---

[5] Summary judgment is proper where, viewing the facts in the light most favorable to the plaintiff, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact, but need not support its motion with affidavits or other materials negating the nonmoving party's claim. Celotex Corp. v.Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings, but must come forward with some form of evidentiary material allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Celotex , 477 U.S. at 324. A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the nonmoving party. Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009).

[6] Mr. Serdah must establish for a due process claim, that "there exists a liberty or property interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation were constitutionally deficient," Barefoot v. City of Wilmington, 306 F.3d 113, 124 (4th Cir. 2002) (citation omitted); see also Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 393 (4th Cir. 1990) (No prior hearing is required where emergency action may be necessary for the protection of a child, so long as the constitutional requirements of notice and opportunity for hearing are postponed rather than eliminated.); for a substantive due process claim, that a state actor's conduct has been "shocking, arbitrary, and egregious," Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); for a Fourth Amendment claim, that there was an unreasonable seizure, Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1126 (3d Cir. 1997) (The state has an interest in protecting children if "it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child . . . is in imminent danger."); for an equal protection claim, that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In short, a guardian *ad litem* who confronts circumstances such as those Edwards' affidavit discloses that he believed he confronted and who seeks a protective order he perceives to be in the best interest of the minor he has been appointed to represent, has crossed no constitutional line.

4

The court also finds that either Edwards was not acting under color of state law or, alternatively, that he is absolutely immune from suit for his conduct as guardian *ad litem.* The United States Supreme Court has found that a public defender is not a state actor because his singular allegiance is to his client, not to the state that employs him. Polk Cnty. v. Dodson, 454 U.S. 312, 317–25 (1981). A number of courts have recognized that a child's guardian *ad litem* is closely analogous to a public defender because his responsibilities are to the child, not the state. Those courts have concluded, therefore, that a guardian *ad litem* is not a state actor for purposes of § 1983. See Kirtley v. Rainey, 326 F.3d 1088, 1092–96 (9th Cir. 2003); Meeker v. Kercher, 782 F.2d 153, 155 (10th Cir. 1986); Snyder v. Talbot, 836 F. Supp. 19, 24 (D. Me. 1993).

In Thomas S. v. Morrow, 781 F.2d 367, 378–79 (4th Cir. 1986), the Fourth Circuit found that the guardian of a ward of the state was acting under color of state law. But Thomas S. is inapposite because the guardian there "no doubt . . . [had] custody of his ward," had the full range of powers possible for a guardian of a ward of the state, and had worked in tandem with state officials regarding the ward's treatment and placements. Id. In contrast, Ms. Serdah has custody of the Serdahs' minor child, makes most choices for the child, and Edwards' role as a guardian *ad litem* is essentially that of an advocate. There is no basis to extend the limited holding of Thomas S. relating to the guardian of a ward of the state to a guardian *ad litem* whose role is simply to advocate.

Alternatively, if Edwards were found to be a state actor, he would be entitled to absolute immunity from § 1983 claims for duties performed within the confines of his role as a guardian *ad litem.* See Fleming v. Asbill, 42 F.3d 886, 889 (4th Cir. 1994) ("Even if [the guardian *ad litem*] lied to the judge in open court, she was still acting as the guardian, and is immune from § 1983 liability."); Smith v. Smith, 7:07cv117, 2007 U.S. Dist. LEXIS 76087, at *19 (W.D. Va.

5

Oct. 12, 2007). This immunity would extend to "functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality." Gardner v. Parson, 874 F.2d 131, 144–46 (3d Cir. 1989). Because Mr. Serdah's claims against Edwards all arise out of his core functions as a guardian *ad litem*, if he were found to be a state actor for the "color of state law" requirement of § 1983, he would, nevertheless, have absolute immunity.

Accordingly, the court finds that Edwards is entitled to summary judgment as to Mr. Serdah's § 1983 claims.

### III. Mr. Serdah's § 1983 Claim Against Ms. Serdah

Ms. Serdah also moves for summary judgment as to Mr. Serdah's § 1983 claim that she filed a false affidavit in connection with her application for the October 28, 2010 protective order.[7] Assuming *arguendo* that Edwards was a state actor, Mr. Serdah's complaint provides no more than a conclusory allegation that Edwards and Ms. Serdah conspired to file the allegedly false affidavit, and a conclusory allegation is entitled to no deference in the face of a conflicting affidavit. Here, Edwards' affidavit denies any involvement whatsoever. Consequently, it is uncontradicted that there was neither the concert of action required for conspiracy, Smith v. McCarthy, 349 Fed. App'x 851, 858 (4th Cir. 2009) (One "necessary element of a conspiracy" under § 1983 is "a meeting of the minds among the [alleged conspirators] to violate the rights of [a plaintiff]."), nor state action to satisfy the "color of state law" requirement of § 1983. See West v. Atkins, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state

---

[7] Ms. Serdah, who also is proceeding *pro se*, adopted Edwards' "motion to dismiss." Although Edwards had only a motion for summary judgment pending, it is contextually clear that she was seeking a favorable ruling however denominated.

law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (internal quotation marks and citation omitted). Accordingly, the court grants Ms. Serdah's motion.

## IV. Mr. Serdah's § 1985 Claims

Mr. Serdah also alleges in a conclusory manner that his former wife and Edwards conspired against him in violation of § 1985. That section has civil rights moorings that are ill suited to dragging into federal court opposing factions in domestic disputes—whether they be former spouses or guardians *ad litem*. It proscribes, in relevant part, conspiracies to obstruct witnesses from testifying, see 42 U.S.C. § 1985(2) (2006), and certain conspiracies to deprive individuals of the equal enjoyment of rights secured by law, see 42 U.S.C. § 1985(3) (2006). To establish a claim under § 1985, a plaintiff "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). The Court of Appeals for the Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a mere conclusory manner, in the absence of concrete supporting facts." Id.; see also A Soc'y Without a Name v. Virginia, 10-1437, 2011 WL 3690000, at *3 (4th Cir. Aug. 24, 2011). Here, Serdah's allegations against his former wife and his minor son's guardian *ad litem* asserting violations of § 1985 are not only conclusory but ring especially hollow under the circumstances disclosed by Edwards' uncontradicted affidavit that he perceived a physical threat against the Serdahs' minor son and acted accordingly. Consequently, the court grants the defendants' motions for summary judgment.

7

## V. Mr. Serdah's Claims for Intentional Infliction of Emotional Distress

Mr. Serdah asserts intentional infliction of emotional distress claims against his former wife and Edwards. However, the affidavit Edwards submitted in support of his motion for summary judgment shows the claims to be frivolous, and the court grants defendants' motions for summary judgment.

To establish a claim for intentional infliction of emotional distress, Mr. Serdah must show that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." Russo v. White, 241 Va. 23, 26 (1991). With regard to the conduct requirement, mere tortious or even criminal intent is insufficient. Id. at 27. Rather, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second) of Torts § 46 (1965)).

Edwards' affidavit in support of his motion for summary judgment is alone sufficient to justify summary judgment in the defendants' favor. At a minimum, it demonstrates that Edwards acted in an objectively reasonable manner in seeking a protective order. It is axiomatic that a guardian *ad litem* who acts in an objectively reasonable manner to protect the minor whose interests he has been appointed to protect does not, thereby, commit the tort of "intentional infliction of emotional distress." Similarly, the allegations Ms. Serdah made when she also sought a protective order on her own behalf on October 28, 2010, several days after Edwards had separately secured a protective order, are in all material respects concerning the nature of Mr. Serdah's threats, the same as the allegations Edwards made after interviewing the Serdahs' son. There is nothing that remotely suggests that she did not believe that Mr. Serdah had made them.

8

At a minimum, her conduct was not outrageous within the purview of the tort of "intentional infliction of emotional distress." Accordingly, the court will enter summary judgment for defendants as to that claim.[8]

**VI.**

Based on scant facts and conclusory allegations, Mr. Serdah's former wife and their son's guardian *ad litem* have been forced into federal court to defend their conduct during state court proceedings. Federal court is not an alternative forum to raise claims a party has either failed to present or lost in a state court proceeding,[9] and it most certainly is no place to force a former spouse to settle an unfinished domestic dispute. This case has all the hallmarks of being nothing more than that. For the reasons stated above, the court enters summary judgment for defendants.

**Enter**: August 30, 2011.

_____
UNITED STATES DISTRICT JUDGE

---

[8] The court also notes that "false, misleading, or defamatory communications, even if published with malicious intent, are not actionable if they are material to, and made in the course of, a judicial or quasi-judicial proceeding." Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 101 (2000). Communications made in an affidavit are likewise not actionable if the affidavit and the proceeding are inseparable; i.e., they constitute a single judicial proceeding, and the affidavit's communications are "pertinent and material to the issue" of the case. Donohue Const. Co. v. Mount Vernon Assocs., 235 Va. 531, 538–39 (1988); Lightner v. Osborn, 142 Va. 19, 24 (1925). Virginia Code § 16.1-253 requires that a motion for a protective order be "supported by an affidavit or by sworn testimony in person before the judge or intake officer." As the defendants' affidavits were required to secure the protective order, the affidavits and the respective proceedings were inseparable; thus, communications made in those affidavits are not actionable.

[9] The Rooker-Feldman doctrine also likely bars some if not all of Mr. Serdah's claims. Clearly, Mr. Serdah is challenging the state courts' decisions. He alleges that Edwards used "his influence in the Roanoke County courts to obtain an order prohibiting the plaintiff from having contact with his son." (Pl. Compl. at ¶ 9.) The courts of the Commonwealth of Virginia are responsible for their own orders, not the individual litigants or their counsel that appear before them. Under the Rooker-Feldman doctrine, federal district courts do not have subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Even "[i]f the state-court decision was wrong, 'that [does] not make the judgment void, but merely open to reversal or modification in an appropriate and timely appellate proceeding.'" Id. (quoting Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923)). Mr. Serdah essentially acknowledged at oral argument that he was challenging the state court's decisions because they were allegedly based on false evidence submitted by Edwards and Ms. Serdah. The venue for such a challenge is the court that rendered the decision or the appropriate state appellate court.